AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone<br>(Target Device) | )<br>)<br>)  Case No.  26mj2541<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

❐ property designed for use, intended for use, or used in committing a crime;

❐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC sec. 2252 & 2252A | Certain Activities Relating to Material Involving the Sexual Exploitation of Minors/Child Pornography |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

❐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Ashley Westman
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:    04/29/2026

_____
*Judge's signature*

City and state:  San Diego, California        Honorable Michael S. Berg, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Ashley Westman, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since November 2019. I am currently assigned to the Violent Crimes Against Children and Human Trafficking squad of the San Diego Field Office, where I primarily investigate crimes concerning child exploitation and the distribution, receipt, possession, production, advertisement, and transmission of child pornography.

2.      My experience as an FBI SA has included the investigation of cases involving the use of computers and the Internet to commit crimes.  I have received training and gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, computer evidence seizure, and various other criminal laws and procedures.  I have personally participated in the execution of search warrants involving the search and seizure of computer equipment and cellular devices.

3.      This affidavit is made in support of an application by the United States of America for the issuance of a warrant to search the following:

- A black OGIO backpack, as described more fully in Attachment A-1, for the items described in Attachment B-1; and

- A black Apple iPhone ("Target Device"), seized from the person of RODOLFO RICARDEZ on April 24, 2026, as described more fully in Attachment A-2, for the items described in Attachment B-2,

which constitute evidence, fruits, and instrumentalities of violations of federal laws, namely, Title 18, United States Code §§ 2252 and 2252A.

4.   The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during the course of this investigation.

## BACKGROUND REGARDING PEER-TO-PEER FILE SHARING

5.   File sharing is a method of distributing electronically stored information, including digital media such as images and videos.  Peer-to-peer (P2P) file-sharing applications enable networks of computer users to share and access files on their computers through the Internet.  Participants in a P2P file-sharing network typically designate certain computer files for access by others within their network. Through the Internet, those within the network can then use the P2P file-sharing application to obtain designated files and transfer them to their own computer.  P2P file-sharing applications have proved to be a prolific means for the receipt and distribution of child pornography through the Internet. Based on my training and experience, I know that users of P2P file-sharing programs can access the programs on various devices—computers, tablets, and cellular telephones.

6.   The "Internet Protocol address" or "IP address," expressed as four groups of numbers separated by decimal points, is unique to a particular computer during an online session.  The IP address can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's

computer a particular IP address which is used each time the computer accesses the Internet.

7. Third party software is available to identify the IP address of the peer-to-peer computer sending the file and to identify if parts of the file came from one or more IP addresses. Such software monitors and logs Internet and local network traffic.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

8. On approximately ten separate occasions between August 2023 and April 2026, a computer under FBI control was used to log into a law enforcement version of a publicly available P2P file-sharing program. This law enforcement version was configured to download suspected child pornography files directly from other computers that are utilizing the same file sharing protocol.

9. After making a connection to the IP Address 72.220.168.233 (hereafter "Subject IP Address"), FBI was able to obtain numerous video files and images directly from the Subject IP Address. Many of these files were videos depicting prepubescent minor females with their genitals exposed or being sexually abused, some of which included bondage. One of the files obtained from this IP address on September 24, 2025, included a video depicting an adult male who appears to be vaginally penetrating a nude, prepubescent minor female whose arms and legs are bound with rope.

10. After viewing these files and other files downloaded, I determined they constitute child pornography as defined in 18 U.S.C § 2256.

11. On August 31, 2023 and September 4, 2025, the FBI served Department of Justice Administrative Subpoenas on Cox Communications for subscriber information associated with Subject IP Address on August 28, 2023 and August 21, 2025, respectively. In response to both subpoenas, Cox confirmed the

3

IP address was assigned to a residence in San Marcos, California, within the Southern District of California.

12. On April 20, 2026, FBI agents and members of the San Diego Internet Crimes Against Children task force executed a residential search warrant for the San Marcos residence. During the execution of the search warrant, the subscriber identified by the internet provider for the IP Address (hereinafter "the Subscriber") was interviewed by law enforcement agents. The Subscriber stated that he lived at the San Marcos, California address with RODOLFO RICARDEZ ("RICARDEZ"). The Subscriber identified RICARDEZ's bedroom at the residence and told agents that RICARDEZ has a laptop computer and cellular phone. The Subscriber stated that he did not know whether the computer had a password because he had never used it and that he does not know the Wi-Fi password and has never shared it with anyone. The Subscriber denied any involvement in searching for, downloading, or possessing any child sexual abuse material.

13. At the time of the execution of the search warrant, RICARDEZ was not present at the residence. Agents called RICARDEZ from the Subscriber's cellular phone and conducted an interview of RICARDEZ. After being advised as to the identities of the agents, RICARDEZ confirmed that he has lived at the San Marcos, California address for approximately the last few years. RICARDEZ related that he had a work laptop, an Apple iPad tablet, and an Apple iPhone with him on a business trip. RICARDEZ stated he has files of child sexual abuse material ("CSAM") on his Apple devices, and that the iPhone and iPad are connected to the same iCloud account. RICARDEZ further related that there was a laptop in his bedroom at the San Marcos, California address, and that he is the only person who uses that laptop.[1] When asked whether the personal laptop

---

[1] When Agents conducted the search warrant at the San Marcos address, the door to RICARDEZ's bedroom was locked and had to be forcibly opened.

4

contained evidence of child sexual abuse material, RICARDEZ stated, "Potentially."

14.    RICARDEZ stated that he uses a file sharing platform to download child sexual abuse material. When asked whether his personal laptop would contain files depicting minors, RICARDEZ stated, "I believe some are." When asked whether the files depicted minors engaged in sex or exposing their genitals, RICARDEZ replied, "I believe so." RICARDEZ related that in addition to seeking out these files on a file sharing platform, he also searches for them on the open internet using search terms like "PTHC."[1] RICARDEZ denied ever distributing the child sexual abuse material to anyone. RICARDEZ declined to provide the password to his laptop computer, but he stated that the personal laptop was his primary device and that he had saved files containing child sexual abuse material to that device.

15.    Pursuant to the residential search warrant, several electronic devices were seized from the residence. Among the items seized from RICARDEZ's residence, agents seized a silver HP Envy laptop computer from the desk in RICARDEZ's bedroom.  Agents observed a sticker on the underside of the HP laptop computer that contained the name "Rodolfo Ricardez." Following execution of the search warrant, the hard drive of the silver HP laptop was forensically reviewed. A preliminary review of the HP laptop revealed several videos of suspected child pornography. Among the files identified on the media were the following:

- A video depicting a minor female wearing a white cropped top, a white choker around her neck with a bell on it, and black shorts or pants that

---

[1] Based on my training and experience and the experience of other agents working CSAM investigations, I know the term "PTHC" to mean "pre-teen hardcore."

are pulled down. The minor is laying on her back and her vagina is being penetrated by an adult male penis.

- A video depicting a minor female with brown hair, wearing a pink shirt and pink shorts. The minor female pulls her shorts down and masturbates by digitally penetrating her vagina with her fingers.
- A video depicting a nude minor female lying on her side and penetrating her vagina with a hairbrush.

16. In addition to evidence of child sexual abuse material, agents also observed several items that indicated dominion and control over the device, including an image file of a California driver's license for "Rodolfo Ricardez" and a Federal Tax Form 1099 for "Rodolfo Ricardez" saved to the device.

17. Based on the above information, Honorable Allison Goddard, U.S. Magistrate Judge, Southern District of California, issued an arrest warrant for RICARDEZ on April 23, 2026.

18. On April 24, 2026, Agents and Task Force Officers of the FBI arrested RICARDEZ at the San Diego International Airport. Following the arrest, Agents seized a black Apple iPhone ("Target Device") and a black OGIO backpack from RICARDEZ's person. RICARDEZ related that the backpack contained his Apple iPad and his work laptop computer. In the presence of the arresting agents, RICARDEZ utilized the Target Device to make several calls to his family and work. Agents also verified the Target Device as belonging to RICARDEZ by calling the phone number associated with RICARDEZ. The Target Device rang and was subsequently placed in airplane mode. Both the backpack and Target Device are being maintained at the FBI San Diego Field Office, in the Southern District of California.

19. As a result of my training and experience in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals who have a sexual interest in children or images of children:

a. These individuals may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasizing while viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. These individuals may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, video tapes, books, sliders and/or drawings or other visual media. These individuals often use these materials for their own sexual arousal and gratification. Furthermore, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. To the extent these individuals possess and maintain "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., they almost always maintain those hard copies in the privacy and security of their home. They typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and video tapes for many years. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

7

d.      Likewise, these individuals often maintain their digital or electronic collections of child sexual exploitation images in a safe, secure, and private environment, such as a computer and surrounding area, or on cellular telephones. These collections are often maintained for several years and are kept close by, usually at the individual's residence, on his or her person, or in his or her vehicles, to enable the individual to view the collection, which is valued highly.

e.      These individuals also may correspond with and/or meet others to share information and materials; are rarely able to completely destroy correspondence from other child pornography distributors/collectors; conceal correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f.      These individuals prefer not to be without their child sexual exploitation images for any prolonged time period. Collectors will take their collection with them if they change residences, as the collection is considered to be a prized possession. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. That said, there are individuals with a sexual interest in children who download and view digital images of child sexual exploitation and delete it in order to avoid detection by law enforcement or other people. However, even in cases where these images are deleted, or concealed via encryption software, forensic examiners can use specialized tools to recover the deleted files or access encrypted files.

g.      These individuals often use specialized software to conceal the existence of evidence and/or destroy said evidence. There are a variety of different programs that an individual can use to accomplish these objectives, many of which are free. Additionally, these individuals have been known to store child pornography in unconventional physical locations, as well as in unusual digital

8

locations on computers and cellular phones. These files and folders, or applications, have been misnamed or renamed in an attempt to mislead investigators.

h.      These individuals will often download and store images of children they know or with whom they have communicated, as well as their communications with those children. The images may not necessarily be pornographic or obscene in nature; however, they are often used for the individuals' sexual gratification.

20.      RICARDEZ exhibits the common characteristics described above of someone involved in the distribution, receipt, possession, and accessing of child pornography, as evidenced by the facts set forth in this Affidavit. Specifically, RICARDEZ admitted to obtaining via a P2P file-sharing program numerous images and videos, many of which constitute child pornography or child erotica. Additionally, RICARDEZ traveled with his personal electronic devices, specifically his Apple iPhone and iPad, which he related he utilized to view and store files containing child pornography.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO THE COMPUTER AND OTHER ELECTRONIC STORAGE DEVICES**

21.      With the approval of the Court in signing this warrant, Agents executing this search warrant will employ the following procedures regarding computers and other electronic storage devices, including electronic storage media, which may contain data subject to seizure pursuant to this warrant:

Seizure and Retention of Instrumentalities

a.      Based upon the foregoing, there is probable cause to believe that any computers and other electronic storage devices encountered during this search are instrumentalities of the enumerated offenses because there is probable cause to believe that they may contain contraband and fruits of crime as provided at Rule 41(c)(2), Fed R. Crim. P., or were used in committing crime as provided at Rule

41(c)(3). Consequently, the computers and any other electronic devices are subject to seizure, retention, and possible forfeiture and destruction. Computers, other electronic storage devices, and media confirmed onsite to contain contraband, constitute fruits of crime, or to have been used to commit crime will not be returned but will be imaged offsite and analyzed as provided beginning at subparagraph (c) below. The onsite confirmation may be provided by an owner or user of the computer or storage device or, if feasible, may be obtained by conducting a limited onsite forensic examination to determine if the subject media contains any contraband or otherwise is an instrumentality. Computers and other electronic storage devices and media that are not confirmed onsite as instrumentalities will be taken offsite for imaging and preliminary analysis in accordance with subparagraph (b) below.

b.    The offsite imaging and preliminary analysis of computers, other electronic storage devices, and media to confirm their status as instrumentalities will be conducted within forty-five (45) days of seizure. Seized items confirmed to be instrumentalities will not be returned and will be further analyzed as provided below. If the preliminary analysis, by definition an incomplete or partial analysis, does not confirm that a seized item is an instrumentality, the original item will be returned promptly to its owner, absent an extension of time obtained from the owner or from the Court. An image of the items will be retained and subjected to a complete forensic analysis, as provided below.

c.    Computers and other electronic storage devices and media that are retained as instrumentalities will not be returned to its owner. The owner will be provided the name and address of a responsible official to whom the owner may apply in writing for return of specific data not otherwise subject to seizure for which the owner has a specific need. The identified official or other representative of the seizing agency will reply in writing. In the event that the owner's request is granted,

10

arrangements will be made for a copy of the requested data to be obtained by the owner. If the request is denied, the owner will be directed to Rule 41(g), Federal Rules of Criminal Procedure.

Identification and Extraction of Relevant Data

d.      A forensic image is an exact physical copy of the hard drive or other media. After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment, and software. There are literally thousands of different hardware items and software programs, and different versions of the same program, that can be commercially purchased, installed, and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

e.      Analyzing the contents of a computer or other electronic storage device, even without significant technical issues, can be very challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue: who created it, when and how it was created, downloaded, or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Sometimes it is possible to recover and entire document that was never saved to the hard drive if the document was printed. Moreover, certain file formats

11

do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database, and spreadsheet applications do not store data searchable text. The data is saved in a proprietary non-text format. Documents printed by the computer, even if the document was never saved to the hard drive, are recoverable by forensic programs but not discoverable by keyword searches because the printed document is stored by the computer as a graphic image and not as text. Similarly, faxes sent to the computer are stored as graphic images and not as text. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data requires a search of other events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which user had logged in, whether users share passwords, whether the computer was connected to other computer or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting as the keyboard.

f.      It is often difficult or impossible to determine the identity of the person using the computer when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users which generally is not visible to users. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies, and application and operating system metadata, often provides evidence of who was using the computer at a relevant time. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars, and address books stored on the computer may identify the user at a particular, relevant time. The manner in which the user has structured and named files, run or accessed particular applications, and created or accessed other, non-incriminating

files or documents, may serve to identify a particular user. For example, if an incriminating document is found on the computer but attribution is an issue, other documents or files created around that same time may provide circumstantial evidence of the identity of the user that created the incriminating document.

g.    Analyzing data has become increasingly time-consuming as the volume of data stored on a typical computer system and available storage devices has been mind-boggling. For example, a single megabyte of storage space is roughly equivalent of 500 double-spaced pages of text. A single gigabyte of storage space, or 1,000 megabytes, is roughly equivalent of 500,000 double-spaced pages of text. Computer hard drives are now being sold for personal computers capable of storing up to 2 terabytes (2,000 gigabytes) of data, and this data may be stored in a variety of formats or encrypted (several new commercially available operating systems provide for automatic encryption of data upon shutdown of the computer). The sheer volume of data also has extended the time that it takes to analyze data. Running keyword searches takes longer and results in more hits that must be individually examined for relevance. And, once reviewed, relevant data leads to new keywords and new avenues for identifying data subject to seizure pursuant to the warrant.

h.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including the use of hashing tools to identify evidence subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within one-hundred and twenty (120) days from the date of seizure pursuant to this warrant, absent further application to this Court.

i.      All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONE

22.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**GENUINE RISKS OF DESTRUCTION OF DATA**

25. Based upon my experience and training, and the experience and training of other law enforcement agents with whom I have communicated, electronically stored data may be permanently deleted or modified by users possessing basic computer skills. In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

**PRIOR ATTEMPTS TO OBTAIN DATA**

26. The United States has not attempted to obtain this data by other means.

**REQUEST FOR SEALING**

27. ~~Because this is an ongoing investigation, I request that this search warrant affidavit be sealed until such time as the Court orders otherwise. Disclosure of the search warrant affidavit at this time would seriously jeopardize the ongoing investigation, as such disclosure may provide an opportunity to destroy evidence, change patterns of behavior, or allow flight from prosecution.~~

#

15

## CONCLUSION

28.    Based on the aforementioned factual information, I submit that there is probable cause to believe that evidence, fruits, and instrumentalities of such criminal offenses may be located within the areas described in Attachments A-1 and A-2,  in violation of 18 U.S.C. §§ 2252 and 2252A.  I, therefore, request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachments B-1 and B-2.

_____
Ashley Westman, Special Agent
Federal Bureau of Investigation


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 29th day of April, 2026.

_____
HONORABLE MICHAEL S. BERG
United States Magistrate Judge

16

## <u>ATTACHMENT A-2</u>

## **PROPERTY TO BE SEARCHED**

Black Apple iPhone ("Target Device") seized from the person of RODOLFO RICARDEZ on April 24, 2026, which is currently stored and maintained at the San Diego FBI Field Office, within the Southern District of California.

 

18

**ATTACHMENT B-2**

**ITEMS TO BE SEIZED**

Authorization to search the **Target Device** described in Attachment A-2 including storage devices, such as SIM cards or memory devices attached to, inserted in or seized with the **Target Device**. The review of the **Target Device** will be conducted in accordance with the "PROCEDURES FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONE" provided in the affidavit submitted in support of this warrant. The following data will be seized only to the extent that it contains evidence of violations of 18 U.S.C. §§ 2252 and 2252A, such as communications, records or data, including emails, text messages, instant messages, photographs, audio files, videos or location data:

1. tending to indicate efforts to send, receive, or possess child pornography, as defined by 18 USC 2256;

2. tending to identify other facilities, storage devices, or services–

3. such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to send, receive, possess or access child pornography;

4. tending to identify co-conspirators, criminal associates, or others involved in the distributing, receiving or possessing of images of child pornography;

5. tending to identify the user of, or persons with control over or access to the **Target Device**; or

6. tending to place in context, identify the creator or recipient of, or establish the time of creation, receipt or modification of communications, records, or data above.

23